UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MARSHALL HUBSHER,

                      Petitioner,

          -against-

DEPARTMENT OF CORRECTIONS COMMUNITY
SUPERVISION PROBATION OFFICER
DWAYNE SHAW,

                    Respondent.
-----------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM AND ORDER**
22-CV-03821 (JMA)

FILED
CLERK

6/17/2026 1:39 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

On March 21, 2016, following a jury trial in state court, Marshall Hubsher ("Hubsher") was convicted of rape in the third degree and criminal sexual act in the third degree.  On July 8, 2016, Hubsher was sentenced to concurrent, determinate terms of three years' imprisonment, to be followed by five years of post-release supervision.  His post-release supervision term expired on June 30, 2022. Hubsher, through counsel, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising three separate grounds for relief: (1) the prosecution violated its obligations under Brady; (2) his trial counsel was ineffective; and (3) the N.Y. Penal Law provisions under which he was charged and convicted are unconstitutionally vague.  (See ECF No. 1 ("Pet.") at 7–19.)  For the following reasons, all of Hubsher's proffered grounds are either procedurally barred or without merit, and the petition is therefore DENIED in its entirety.

## I.    BACKGROUND [1]

A.    **Evidence at Trial**

Hubsher was Kerry K.'s psychiatrist.  At her first appointment with Hubsher on March 29, 2012, Kerry disclosed her struggles with depression and anxiety.  (Tr. 600–05.)  Hubsher discussed a treatment plan with Kerry and wrote her a prescription for a new antidepressant.  (Id. 608–09.)  On April 3, 2012, Kerry went to Hubsher's office for a second appointment.  (Id. 618–19.)  Near the end of the session, Hubsher sat next to her on the patient's couch, told her that having an orgasm would be therapeutic for her, and kissed her while pushing her down on the couch.  (Id. 624–25.)  Hubsher then pulled off her pants, licked her vagina, and penetrated her with his fingers and penis.  (Id. 629–30.)

Kerry reported the rape to the police a few days later.  (Id. 634–37.)  At their request, she participated in recorded telephone calls with Hubsher and turned over voicemails that he had left for her since the rape.  In the voicemails and recorded calls, Hubsher referred to himself as Dr. Hubsher and to Kerry as his patient, discussed her treatment, medication, and insurance coverage, and admitted that he had sex with her during their last treatment session.  (See, e.g., id. 638–42).

B.    **Hubsher's Trial and Conviction**

Hubsher was arrested on April 18, 2012, and charged with rape in the third degree, N.Y. Penal Law § 130.25[1], and criminal sexual act in the third degree, N.Y. Penal Law § 130.40[1]. The People prosecuted Hubsher under the theory that Kerry could not consent to his conduct because she was his patient, he was a psychiatrist, and the sex occurred during their treatment session.  See N.Y. Penal Law § 130.05[3][h].  Hubsher was tried in New York Supreme Court,

---

[1] The facts and procedural history set out in this opinion are taken from the petition, as well as from the state court trial and appellate records.    "Tr." refers to the trial transcript, People v. Hubsher Trial Tr., Feb. 18, 2016; Mar. 2–3, 7–10, 14–17 2016; ECF Nos. 10, 10-22, 10-24–10-33.  "S." refers to the transcript for the sentencing proceedings, People v. Hubsher, S. Tr., July 8, 2016, ECF No. 10-40.

2

Nassau County, in March of 2016 (Delligatti, J.).  At trial, the prosecution presented the testimony of Kerry K., as well as Detective Pacheco, who investigated the rape and arrested Hubsher. Hubsher introduced the testimony of expert psychiatrist Dr. Alexander Bardey, who testified that a treatment session "starts and stops at a specific time," and "[i]t's only . . . what occurs within that agreed-upon period of time which defines the nature of that relationship."  (Tr. 1211, 1228.) Bardey also testified that a doctor's ethical violations during a treatment session, such as engaging in sexual contact with a patient, could terminate the session.  (See Tr. 1202–59.)

Hubsher's defense at trial was that the sex had not occurred during a treatment session under Penal Law § 130.05[3][h], that Kerry was not Hubsher's patient when she returned to his office on April 3, and that Kerry had consented to the sexual encounters and was engaging in prostitution in exchange for Hubsher paying her rent.[2]  (See, e.g., Tr. 1307–09, 1317.)

The defense rested on March 16, 2018.  On Friday March 18, 2018, the second day of jury deliberations, one of the jurors, Susan Stalzer, wrote a note to the court asking to be excused from the jury.  The note stated: "I need to be excused from the jury, because I'm getting too angry and emotionally involved and it is affecting my health."  (Id. 1501.)  The court read the note to the prosecutor, defense counsel, and Hubsher.  (Id.).  The court then questioned Stalzer as to whether she could continue jury deliberations and Stalzer reiterated her request to be excused.  (Id. 1503–05.)  The court also gave the parties the opportunity to question Stalzer.  (Id. 1506.)  The prosecutor

---

[2]  At trial, Kerry testified that at their first session on March 29, 2012, after telling Hubsher that she had been experiencing financial troubles, Hubsher offered to pay her rent.  (Tr. 605.)  Kerry refused the offer.  At the next session on April 3, Hubsher again offered to pay her rent.  (Id. 620.)  Kerry testified that she at first did not feel comfortable accepting his offer, but after he insisted, she agreed to accept a check from him for $2,600, two months' rent, on the condition that he write a note for her to sign promising that she would pay him back.  (Id. 621–22.)  The note was on Hubsher's letterhead, and stated, "I owe Marshall Hubsher $2600 and will pay this debt by Dec 1, 2012." (Id. 621–11, 759–63.)  Hubsher presented a copy of the note at trial.  On the copy of the note that Hubsher produced at trial, above the line with the promise to pay him back, the note stated: "I am not now, nor will I be in the future, a patient of Dr. Hubsher."  (Id. 759–63; see Resp. Opp. at v.)  Kerry testified at trial that when she signed the note, it did not include that line.  (Id. 760.)  In summation, defense counsel used the note in support of Hubsher's argument that this was an unscheduled appointment and not a treatment session and that Kerry was not his patient.  (See, e.g., id. 1401.)

asked her to elaborate on how her health was being affected, and Stalzer explained, "I get very emotional and very passionate about what I believe, and when presented with a different opinion, I can respect that." (Id.) Stalzer continued, "But I think that when the different opinion is not backed up by anything, just a feeling or preconceived notion or prejudice, I can't deal with that and I get very angry and upset, because it's not being fair." (Id. 1505–06.) Defense counsel did not ask Stalzer any questions. (Id.)

In Stalzer's absence, the court told the prosecutor and defense counsel, "We have three choices, to excuse her and declare a mistrial, direct her to continue, or replace her with an alternate juror." (Id. 1507.) Defense counsel responded, "My opinion is to replace her," and requested permission to confer with Hubsher about that decision. The court allowed counsel time to consult with Hubsher, and when counsel returned, he said, "[W]e believe that, based on the health reasons, [Stalzer] should be excused . . . and that she should be replaced with [an alternate juror]." (Id. 1508.) The prosecutor expressed concern that Stalzer had not described an "illness" within the meaning of N.Y. Crim. Proc. Law § 270.35. (Id. 1508–09.) With Hubsher's consent, the court decided to proceed with the substitution. (Id. 1509). Back in open court, the court explained to Hubsher that he had "an absolute right under the constitution to refuse to consent to replacing that juror," in which case, the court would declare a mistrial and Hubsher "would be entitled to a new trial" (Id. 1510-11.) Hubsher confirmed his desire to replace Stalzer with an alternate juror and signed a form agreeing to the replacement. (See id. 1511.) The court excused Stalzer and substituted an alternate juror. The court instructed the alternate juror that she would "participate in the deliberations going forward," and instructed the other jurors to "bring [the alternate] up to date as to what your deliberations have been up to this point, so that she can be up to speed as to where the rest of you are at this point." (Id. 1513–14.)

4

Approximately two hours later that same day, around 4:30 p.m., the jury sent a note stating, "After considering the evidence, with much discussion and deliberation, we have come to a final vote, which unfortunately did not reach a unanimous decision." (Id. 1515.) The court told the prosecutor and Hubsher that it would adjourn proceedings for the weekend, and on Monday, when trial was set to resume, would give instructions "that I would normally give to a jury that indicates that they are unable to reach a unanimous decision, and then I am going to ask them to continue their deliberations." (Id.) Defense counsel asked, "Are you doing more than that, like an Allen charge?" (Id.) The court responded, "Monday morning I will give them further instructions, in a sense the Allen charge, yes." (Id.) Neither party objected. (Id.)

The court then told the jurors, "I'm going to bring you back on Monday, and I will give you substantially additional instructions that I am required to do when I have a jury that feels deadlocked." The court further stated that: "after further deliberations, most juries are in fact able to reach a unanimous verdict"; that "both sides and I continue to have confidence" that the jurors could perform their duty; and that "there was no reason to believe that the presentation of this case to another jury would be any more intelligent, reasonable, or hardworking and fair as you have been." (Id. 1518.) On the following Monday, March 21, 2016, around 10:00 a.m., before the court had recalled the jury to deliver additional instructions, the jury sent a note stating that it had reached a verdict. (Id. 1522.) The jury convicted Hubsher of both counts.

On May 25, 2016, the court denied Hubsher's motion to set aside the verdict. (ECF No. 10-39.) On July 8, 2016, the court sentenced him to concurrent, determinate terms of three years' imprisonment, to be followed by five years of post-release supervision. (S. 27–28).

During the trial, Hubsher disguised himself, entered the courthouse, and left notes for the jury in the room where it deliberated. (Resp. Opp. at xii; see, e.g., Tr. 1521–24.) For his conduct

during trial, Hubsher was charged with burglary in the third degree (N.Y. Penal Law § 140.20) and thirteen counts of attempted tampering with a juror in the first degree (N.Y. Penal Law §§ 110.00/215.25; see also, e.g., Resp. Opp. at xii.)  On July 11, 2017, Hubsher pled guilty to the burglary count and two attempted tampering counts.  On August 9, 2017, the court sentenced him to an indeterminate term of one to three years' imprisonment on the burglary count, and to lesser concurrent terms on the attempted tampering counts.  (See id.)

### C.    Post-Conviction Proceedings

Hubsher appealed the judgment of conviction in his rape case to the Second Department of the New York State Appellate Division.  On appeal, he argued, among other things: (1) the evidence of his guilt was legally insufficient and the jury's verdicts were against the weight of the evidence; (2) N.Y. Penal Law § 130.05(3)(h) was unconstitutionally vague; (3) the prosecution committed a Brady violation by withholding the names of the senders of text messages on Kerry's phone; (4) the trial court erred in discharging a juror and replacing her with an alternate; and (5) the trial court's deadlocked jury charge was erroneous.  (ECF No. 10-41); see also People v. Hubsher, 176 A.D.3d 972 (2019); Brady v. Maryland, 373 U.S. 83 (1963).

In a decision dated October 16, 2019, the Appellate Division, Second Department affirmed his conviction.  Hubsher, 176 A.D.3d at 972.  The court first found that the evidence was sufficient to establish Hubsher's guilt beyond a reasonable doubt when viewing the evidence in the light most favorable to the prosecution.  Id.   In conducting an independent review of the weight of the evidence, the court also held that the verdict was not against the weight of the evidence.  Id.  The court further held that Hubsher's constitutional vagueness challenge was unpreserved, and in any event, meritless, "as the statute provides the defendant with adequate notice and the police with clear criteria for enforcement.'"  Id. (quoting People v. Stuart, 100 N.Y.2d 412, 422 (2003)).  The

court also rejected Hubsher's Brady challenge, holding that the prosecution's failure to disclose the identities of the senders of the text messages did not violate Brady because Hubsher "failed to demonstrate that the identities of those individuals were exculpatory or impeaching" and failed to demonstrate that their testimony would have been admissible and relevant, "given that the crimes with which the defendant was charged were premised upon the complainant's incapacity to consent to the sexual acts that occurred." Id. at 973 (citations omitted). Finally, the court also held that Hubsher waived his challenge to the discharge of the juror, because he "expressly consented to the discharge" and to the substitution of an alternate in open court and in writing, and the record reflected his consent was "knowing, intelligent, and voluntary." The court concluded that, "[a]lthough it would have been a better practice for the court to instruct the jury to begin deliberations anew following the substitution, there was no possibility of prejudice as a result of the court's instructions," and moreover, that the court's "instructions to the jurors upon receiving a note indicating that they were unable to reach a unanimous verdict were not improper." Id. at 974–75.

Hubsher sought leave from the New York Court of Appeals to appeal the Appellate Division's decision. On February 28, 2020, the Court of Appeals (Wilson, J.) denied Hubsher's application for leave to appeal. People v. Hubsher, 34 N.Y.3d 1159 (2020). On March 2, 2020, Hubsher was released from prison and placed on post-release supervision.

In March 2021, Hubsher filed a motion to vacate his judgment of conviction in Nassau County Supreme Court. (ECF No. 10-46); see N.Y. Crim. Proc. Law § 440.10. Hubsher argued that he was deprived of his constitutional right to the effective assistance of counsel at his trial when his trial lawyer failed to retain an expert witness to testify on his behalf that he had a medical condition that made it impossible for him to have sexual intercourse. (See ECF No. 10-46.).

7

Hubsher argued that his trial counsel was also ineffective for not objecting when the court failed to instruct the jury to begin deliberations anew after the juror was replaced, and for not objecting to the allegedly erroneous deadlocked jury charge. (See id.) In an order dated July 28, 2021, the Supreme Court (Delligatti, J.) denied his motion. (ECF No. 10-48.) Hubsher sought leave to appeal to the Appellate Division from the denial of his motion to vacate judgment, which the court denied. On December 17, 2021, Hubsher filed a second motion to vacate judgment in New York Supreme Court. (See ECF No. 10-50.). In the second motion, Hubsher argued that he was deprived of his constitutional right to the effective assistance of counsel when his attorney "prevented" him from testifying on his own behalf. (See id.) He also argued, as he had on direct appeal to the Appellate Division, that the prosecution violated Brady when it produced text messages between the victim from her acquaintances but redacted the identities of the senders. In an order dated June 3, 2022, the Supreme Court (Hoefenkrieg, J.) denied the motion. Hubsher again sought leave to appeal to the Appellate Division, which the court denied.

On June 29, 2022, Hubsher filed the instant petition pursuant to 28 U.S.C. § 2254.[3] (See Pet.) On April 27, 2023, Respondent filed its opposition. (See Resp. Opp.)

## II.    DISCUSSION

Hubsher presents three grounds for relief.[4] First, he argues that the N.Y. Penal Law section under which he was prosecuted, Section 130.05[3][h], is unconstitutionally vague. Second, he argues that the prosecution violated its obligations under Brady by producing redacted text

---

[3] The parties do not dispute that Hubsher was in custody at the time of filing or that he has fully exhausted all available state-court remedies. See 28 U.S.C. § 2254(b)(1).

[4] In the petition itself, Hubsher also argues: (1) the trial court committed reversible error by failing to instruct the reconstituted jury that it must start deliberations anew; and (2) the trial court committed reversible error by failing to deliver a proper Allen charge. (See Pet. at 4–5.) However, in his memorandum of law, he raises these claims only in connection with his ineffective-assistance claim, not as stand-alone claims. Because Hubsher fails to show that the state court's rejection of the stand-alone claims was contrary to, or in violation of, established federal or constitutional law, they fail on the merits. Hubsher, 176 A.D.3d at 972; see infra II.

messages sent to the victim by acquaintances that concealed the identities of the senders, and the trial court erred in denying the defense's request for unredacted versions of the messages. Third, he argues that his right to the effective assistance of trial counsel was violated when his trial attorney failed to retain an expert witness to testify on his behalf about his alleged impotence, failed to object when the court instructed the jury to begin "deliberations anew" after a juror was replaced, and failed to object to the court's deadlocked jury charge. (See Pet. at 7–19.)

For the reasons discussed below, the Court finds that all of Hubsher's stated grounds for relief lack merit, and therefore, the Court denies the motion in its entirety.

## A.    Applicable Law

### 1. Section 2254 Standard

28 U.S.C. § 2254 ("Section 2254" or "§ 2254"), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), permits federal habeas review of a state court's decision on the merits of a petitioner's claims where the state-court decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." §§ 2254(d)(1)–(2); see Englert v. Lowerre, 115 F.4th 69, 80 (2d Cir. 2024), cert. denied sub nom., Englert v. Bishop, 145 S. Ct. 2826 (2025). "'Clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" Green v. Travis, 414 F.3d 288, 296 (2d Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)) (alteration in original). A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the

9

Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412–13 (O'Connor, J., concurring).  A decision involves "an unreasonable application" of clearly established federal law when a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413.

AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 565 U.S. 65, 66 (2011) (per curiam)).  A state court's determinations of factual issues are "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006).  A state court's finding of fact will be upheld "unless objectively unreasonable in light of the evidence presented in the state court proceeding." Lynn, 443 F.3d at 246–47 (quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)).

Thus, a federal court may overrule a state court's judgment only if "after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Williams, 529 U.S. at 389.  Finally, "if the federal claim was not adjudicated on the merits, AEDPA deference is not required, and conclusions of law and mixed findings of fact . . . are reviewed de novo." Dolphy v. Mantello, 552 F.3d 236, 238 (2d Cir. 2009) (internal quotation marks and citation omitted).

Moreover, a federal court "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" Downs v. Lape, 657 F.3d 97, 101 (2d

Cir. 2011) (quoting Cone v. Bell, 556 U.S. 449, 465 (2009)); see also Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003) (quoting Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)), unless the petitioner demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claims will result in a fundamental miscarriage of justice," Coleman, 501 U.S. at 750, 111 S.Ct. 2546. A procedural ground is "independent" if "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." See Harris v. Reed, 489 U.S. 255, 263 (1989) (internal quotation marks and citation omitted). A procedural bar is "adequate" if it is "based on a rule that is firmly established and regularly followed by the state in question." Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (internal quotation and citation omitted).

### 2. Ineffective Assistance Standard

Claims of ineffective assistance of counsel are evaluated under the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, the petitioner must show "that counsel's representation fell below an objective standard of reasonableness"; and second, he must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Under the first, "performance" prong, a petitioner must: (a) "show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms", with the court's review being highly deferential and with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"; and (b) "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." United States v. Peterson, 896 F. Supp. 2d 305, 312 (S.D.N.Y.

11

2012) (quoting Strickland; internal quotation marks omitted).  As to the second, "prejudice" prong, a petitioner must show that he was prejudiced by the alleged deficient performance, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Wilson v. Mazzuca, 570 F.3d 490, 502 (2d Cir. 2009) (quoting Strickland, 466 U.S. at 694).  A petitioner is required to show "[t]he likelihood of a different result [was] substantial, not just conceivable."  Harrington v. Richter, 562 U.S. 86, 111–12 (2011) (internal quotation marks omitted).  Moreover, "[i]n assessing prejudice, courts 'must consider the totality of the evidence before the judge or jury.'"  Berghuis v. Thompkins, 560 U.S. 370, 389 (2010) (quoting Strickland, 466 U.S. at 695).

"Because both parts of the Strickland test must be satisfied for a petitioner to establish ineffective assistance of counsel, failure to satisfy one part of the test frees a district court from assessing whether the petitioner satisfied the other part of the test."  Velez v. United States, No. 05-cv-0537, 2006 WL 1952191, at *4 (S.D.N.Y. July 10, 2006) (citing Strickland, 466 U.S. at 699 (instructing a court need not "address both components of the [two-part Strickland] inquiry if the defendant makes an insufficient showing on one")); see also United States v. Derounian, No. 16-cr-0412, 2024 WL 3623522, at *12 (E.D.N.Y. Aug. 1, 2024) ("A court must reject a petitioner's ineffective assistance of counsel claim if it fails to meet either prong.") (citing Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013)).  "The defendant bears the burden of showing deficiency and prejudice."  United States v. Bush, No. 19-cr-0378, 2026 WL 263006, at *3 (E.D.N.Y. Feb. 2, 2026) (citing Weaver v. Massachusetts, 582 U.S. 286, 299 (2017)).

12

**B.      Analysis**

**1.  Hubsher's Constitutional Vagueness Claim is Meritless.**

Hubsher argues that the N.Y. Penal Law section under which he was charged and convicted, Section 130.05(3)(h), is unconstitutionally vague, both on its face and as applied to his case. (See Pet. at 17–19.)  Respondent argues that Hubsher's contention is procedurally barred by an independent and adequate state-law ground—New York's preservation rule—and that, in any event, the Appellate Division's rejection of this claim on the merits was not "contrary to, [n]or involved an unreasonable application of, Supreme Court precedent." (See Resp. Opp. at 16–21.) The Court agrees with Hubsher that his claim is at least partially preserved, and therefore, in an abundance of caution, the Court reviews his challenge on the merits.  However, the Court agrees with Respondent that his claim fails on the merits.

New York's preservation rule "provides that, with a few exceptions not applicable here, New York appellate courts will review only those errors of law that are presented at a time and in a manner that reasonably prompted a judge to correct them during criminal proceedings." Downs, 657 F.3d at 103; see New York Criminal Procedural Law § 470.05(2)).   Courts in the Second Circuit have consistently recognized New York's preservation rule as an adequate and independent state procedural rule barring habeas review.  See, e.g., Whitley v. Ercole, 642 F.3d 278, 292; Downs, 657 F.3d at 104; Garvey v. Duncan, 485 F.3d 709, 720 (2d Cir. 2007); Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999) (noting that federal courts "have observed and deferred to New York's consistent application of its contemporaneous objection rules"); see Glenn v. Barlett, 98 F.3d 721, 724–25 (2d Cir. 1996) (finding that failure to preserve issue for appeal was adequate and independent state law ground precluding federal habeas review).

At trial, Hubsher's counsel did not argue that Penal Law § 130.05(3)(h) was facially unconstitutionally vague, and on appeal, the Appellate Division ruled that his "argument that the

Penal Law sections with which he was charged are unconstitutionally vague on their face is unpreserved for appellate review." Hubsher, 176 A.D.3d at 972 (citing CPL 470.05(2)).  Hubsher argues that holding was incorrect, because his trial counsel filed a motion to dismiss the indictment prior to trial that argued in part that Penal Law § 130.05(3)(h) was impermissibly vague, and that the Appellate Division therefore erred in holding that his claim was unpreserved for appellate review.  (ECF No. 8 at 5 ("Reply Br.").)

Hubsher's motion to dismiss argued that the counts of the indictment charging him with Penal Law § 130.50(3)(h) must be dismissed as unconstitutionally vague as applied, because "neither Hubsher, nor law enforcement, can reasonably understand whether the complainant was a 'patient' at the time of the alleged conduct or whether the alleged conduct occurred during a 'treatment session, consultation, interview, or examination.'"  (See ECF No. 11-1 at 9–11.) Specifically, he contends that Kerry went to him for a "mental health consultation," but that he informed her during their first meeting that she could not be his patient because he did not accept her insurance.  He claims the situation was "further confused" when Kerry allegedly asked Hubsher to lend her money for rent.  (See id.)

In his petition, Hubsher now argues that the terms "treatment session, consultation, interview, or examination" are too vague and undefined to provide adequate notice to law enforcement or citizens. Specifically, Hubsher cites the People's expert, Dr. Andrew Levin, who testified "that conversations and sessions, conversations or treatment sessions between a psychiatrist and a patient can cover a wide variety of topics, and can take place in a variety of settings, including but not being limited to the doctor's office, visits by the psychiatrist to a patient's home . . . even conversations over the phone," and also testified that "'the issue of a treatment session has to do with the setting, the expectations.'" (Pet. at 18.)  He also cites the

defense's expert, Dr. Alexander Bardey, who testified that either a doctor or a patient can terminate a treatment session.  (See Reply Br. at 19.)  Hubsher contends that "[i]f experts in the field of psychiatry . . . cannot agree on the basic definitional elements of what establishes, constitutes, commences, or terminates a 'treatment session,' then it is clear that the term is 'so vague that men of common intelligence must necessarily guess at its meaning and its application." (Pet. at 18–19 (citing Baggett v. Bullitt, 377 U.S. 360, 367 (1964)).

Although Hubsher's current as-applied vagueness claim relies on trial testimony and therefore was not—and could not have been—raised in his pretrial motion to dismiss the indictment, the Court assumes arguendo that this as-applied vagueness claim is not procedurally barred.[5]  Reviewing that claim on the merits, the Court finds it unavailing because Hubsher cannot show that the Appellate Division unreasonably applied federal law in concluding that Penal Law § 130.05(3)(h) is not unconstitutionally vague.  Penal Law § 130.05(3)(h) states:

> A person is deemed incapable of consent when he or she is: a client or patient and the actor is a health care provider or mental health care provider charged with rape in the third degree as defined in section 130.25 , criminal sexual act in the third degree as defined in section 130.40 , aggravated sexual abuse in the fourth degree as defined in section 130.65-a , or sexual abuse in the third degree as defined in section 130.55, and the act of sexual conduct occurs during a treatment session, consultation, interview, or examination.

In its alternative holding, the Appellate Division concluded that the statute was not unconstitutionally vague because it "'provide[d] the defendant with adequate notice and the police with clear criteria for enforcement.'"  Hubsher, 176 A.D.3d at 972 (citing Stuart, 100 N.Y.2d at 422).

Courts evaluating an "as-applied" vagueness challenge apply a two-part test: the court "must first determine whether the statute gives the person of ordinary intelligence a reasonable

---

[5]  Hubsher's facial challenge is procedurally barred.  That challenge also fails, on the merits, given that Hubsher's as-applied challenge is meritless.  See Brokamp v. James, 66 F.4th 374, 403 (2d Cir. 2023).

opportunity to know what is prohibited and then consider whether the law provides explicit standards for those who apply it." United States v. Nadi, 996 F.2d 548, 550 (cleaned up); see United States v. Williams, 553 U.S. 285, 304 (2008) (citing Hill v. Colorado, 530 U.S. 703, 732 (2000) ("A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."); see also Deal v. Bellneir, No. 10-cv-3307, 2015 WL 778235, at *7 (E.D.N.Y. Feb. 24, 2015) (citing Hill, 530 U.S. at 732) ("In determining whether a statute is unconstitutionally vague, a court must first determine whether a statute gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited, and second, the court must consider whether the law provides explicit standards for those who apply it."). When a vagueness challenge is as-applied, as opposed to facial, "the challenge cannot succeed if the defendant's conduct 'is clearly proscribed by the statute.'" United States v. Houtar, 980 F.3d 268, 274 (2d Cir. 2020) (quoting United States v. Rybicki, 354 F.3d 124, 129 (2d Cir. 2003)) (emphasis in original).

The Appellate Division's decision to deny Hubsher relief on this claim was not contrary to, or an unreasonable application of, clearly established federal law. Initially, the two experts' definitions of a "treatment session" are not inconsistent, undermining Hubsher's contention that the experts disagree on the meaning of the term. Moreover, the fact that reasonable minds may differ as to whether a particular situation falls within a "treatment session" does not render the statute void for vagueness. See, e.g., United States v. Williams, 553 U.S. 285, 305–06 (2008) (rejecting the proposition that "the mere fact that close cases can be envisioned renders a statute vague," explaining that "[c]lose cases can be imagined under virtually any statute" and that "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether

16

the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."). Here, the statutory terms have clear meanings, and any factual disputes over whether a person is a client or provider, or whether the conduct occurs during a session, do not render the statute impermissibly vague.

Moreover, the statute clearly bars the conduct Hubsher was charged and convicted of in this case. Here, the evidence at trial established that Hubsher had sex with Kerry, a returning patient, in his office while she was sitting on his couch during a scheduled appointment. Applying the common sense meaning of the terms "treatment session," "patient," and "provider," it is clear to an ordinary person of reasonable intelligence that the statute as written would prohibit that conduct. See, e.g., Maynard v. Cartwright, 486 U.S. 356, 361 (1988) ("Objections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk.").

### 2. Hubsher's Brady Claim Lacks Merit.

Second, Hubsher argues that the prosecution violated its obligations under Brady by producing text messages sent to the victim by acquaintances that redacted the identities of the senders, and the trial court erred in denying the defense's request for unredacted versions of the messages. (See Pet. at 8–11.) Respondent argues that Hubsher has failed to demonstrate that the state courts' adjudication of his claim was objectively unreasonable, and therefore, his current claim lacks merit. The Court agrees.

Under Brady v. Maryland, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963); see also United States v. Certified Environmental Services, Inc., 753 F.3d 72, 91 (2d Cir. 2014).

17

"There are three components of a true Brady violation: (1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281–82. "Evidence is material—and its suppression is considered prejudicial—only 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Ortiz v. Barkley, 558 F. Supp. 2d 444, 455 (S.D.N.Y. 2008) (quoting Strickler, 527 U.S. at 280); see Strickler, 5217 U.S. at 281 ("[S]trictly speaking, there is never a real 'Brady violation' unless the [Government's] nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.").

Before trial, the People provided Hubsher with text messages from Kerry's phone between Kerry and third parties, with the names of the third parties redacted. In one set of messages, Kerry told a third party that she had reported Hubsher for raping her, and the person told her, "Reporting it is fucked up, especially if he gave you money." Kerry responded, "You need to google sex with a patient. Totally illegal and fucked up. He took advantage of me." The third party responded, "no he didn't. You fucked him. You're lying about it and you know it. You agreed to have sex with him. You did it for the money and blackmail. That's how it looks." In another set of text messages, a different third party told her that he had found a lawyer for her and that he would "advise you for nothing." Kerry responded, "I'm so overwhelmed right now. I can't even think that far ahead." The third party responded, "You need a guy who will put pressure on the cops the make the criminal case strong," so then Kerry could "clean him out civilly." (Pet. at 10–11; Resp. Opp. at 5.)

Hubsher twice moved for the People to provide copies of the text messages with the names unredacted.  After an in camera review of the messages, the trial court denied both applications. (See ECF Nos. 10-21, 10-23.)  At trial, defense counsel cross-examined Kerry regarding the text messages and the court allowed defense counsel to ask Kerry the names of several of the third parties, including the two third parties in both sets of messages above.  (See, e.g., Tr. 687–710.) On March 10, 2016, Hubsher asked the court to issue a subpoena for the appearance of the third party in the second set of messages described above.  (Hubsher did not seek a subpoena on the third party in the first set of messages).  When the subpoena went unheeded, he made no further applications.

On appeal, the Appellate Division upheld the trial court's rejection of this Brady claim, reasoning that Hubsher "failed to demonstrate that the identities of those individuals were exculpatory or impeaching" and failed to demonstrate that their testimony would have been admissible and relevant, "given that the crimes with which the defendant was charged were premised upon the complainant's incapacity to consent to the sexual acts that occurred." Hubsher, 176 A.D.3d at 973.  Hubsher argues that the Appellate Division's determination was improper, contending that because the text messages were exculpatory and could have been used to impeach Kerry, the identities of the third parties were also exculpatory.  (See Pet. at 4, 9–11.)  Moreover, he argues that even though trial counsel was able to cross-examine Kerry and discover the names of the individuals at trial, it was too late for trial counsel "to have a fair and timely opportunity to locate, speak to, and secure the trial testimony of these witnesses." (Id. at 10.)

The Appellate Division reasonably concluded that Hubsher failed the first prong of the Strickler test because he does not identify any exculpatory evidence that was withheld from him. Even assuming that the evidence was effectively withheld—i.e., accepting Hubsher's contention

that the disclosure of the identities of the third parties was untimely and deprived him of a meaningful opportunity to secure their testimony—his claim still fails because there is no indication that their testimony would have been exculpatory or even relevant. Initially, although the prosecution disclosed the messages out of an abundance of caution, it is not clear that the messages were exculpatory or materially aided his defense. For example, in the second set of messages described above, the third party merely expressed an opinion regarding how it might look if Kerry reported Hubsher's criminal conduct to the police. (See, e.g., Pet. at 10 ("you did it for the money and blackmail. that's how it looks.")). More fundamentally, Hubsher's guilt was "premised upon the complainant's incapacity to consent to the sexual acts that occurred." Hubsher, 176 A.D.3d at 973; see generally Jimenez v. Walker, 458 F.3d 130, 147 (2d Cir. 2006) (observing that a defendant does not have an "unfettered right" to offer testimony "otherwise inadmissible under standard rules of evidence") (internal quotation marks omitted). In the recorded call admitted at trial, Hubsher himself admitted to the acts themselves, and none of the text messages bore on the question of whether or not those acts occurred during a treatment session, which was Hubsher's defense at trial. As a result, the messages were not relevant to the dispositive issue of whether Kerry was legally incapable of consent.

Moreover, even if the messages were marginally exculpatory, the trial court and Appellate Division reasonably concluded that Hubsher failed to establish either: (1) that the identities of the senders would have meaningfully aided his defense and; (2) that their testimony would have been admissible and relevant. The jury was already made aware of the messages during cross-examination. None of the third parties were alleged to have witnessed any of the events at issue or to have any personal knowledge of the circumstances of the case. Thus, even assuming their testimony would have been admissible, nothing in the record suggests that any of the third parties

20

could have provided information beyond the contents of the text messages themselves—let alone anything that would have been exculpatory or material under Brady.

Finally, there is not a reasonable probability that testimony from any of the individuals with whom Kerry exchanged text messages would have resulted in an acquittal. See, e.g., Ortiz, 558 F. Supp. 2d at 455 (S.D.N.Y. 2008) (explaining that withheld information is material only "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different'"). As indicated above, during his cross-examination of Kerry at trial, defense counsel elicited the names of several of the third parties at trial, and he even subpoenaed one of them to testify. (Tr. 1076.) Hubsher claims he was still prejudiced, arguing that the delayed disclosure deprived him of "a fair and timely opportunity to locate, speak to, and secure the trial testimony of these witnesses." (Pet. at 10.) This argument fails. First, there is nothing in the record suggesting that any of these witnesses would have willingly spoken with the defense before trial. Second, his prejudice argument is also undermined by the fact that, after learning the identities of the senders, he sought a subpoena for only one individual and, when that subpoena went unheeded, made no further applications to secure that individual's testimony or the testimony of any of the other third parties. Hubsher's failure to pursue this purportedly critical testimony further undermines his argument that the delayed disclosure prejudiced the outcome at trial. Moreover, the evidence at trial was overwhelming, including Kerry's own testimony regarding her rape by Hubsher, which was corroborated by Hubsher's own recorded admission that he had committed the rape.

In sum, because Hubsher has failed to establish any of the three elements of a Brady violation, he has not shown that the state courts' rejection of his claim was objectively unreasonable.

### 3. Hubsher's Ineffective-Assistance Claim Lacks Merit.

Hubsher asserts three claims of ineffective assistance of trial counsel: first, that his trial counsel failed to retain an expert witness to testify on his behalf about his alleged impotence; second, that trial counsel failed to object when the court instructed the jury to begin "deliberations anew" after a juror was replaced; and third, that trial counsel failed to object to the court's deadlocked jury charge. (See Pet. at 11–17.) Hubsher raised all three claims in his first CPL 440.10 motion to vacate his conviction in Nassau County Supreme Court. (See ECF No. 10-46.) The Court agrees with Respondent that Hubsher has failed to demonstrate that the 440 court applied Strickland unreasonably when rejecting his claims.

First, the 440 court reasonably rejected Hubsher's argument that counsel was ineffective for failing to call a urologist to testify about his alleged impotence. According to Hubsher, the urologist would have testified that he "has a genital disorder which makes it impossible for him to have sexual intercourse," and therefore the testimony "would have negated an essential element" of his third-degree rape charge, i.e., engaging in sexual intercourse. (Pet. at 13.) The 440 court explained that Hubsher's trial counsel "elected to defend the case on the theory that the victim consented to the sexual encounters; that they did not take place during therapy sessions; and that the defendant was not the victim's therapist." (ECF No. 10-48 at 3.). Given those facts, the 440 court concluded that the introduction of evidence of Hubsher's impotence would have been "at odds with" that reasonable strategy. (Id.)

As the 440 court correctly concluded, this claim fails Strickland's first prong. "[T]he tactical decision of whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation." United States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997); see also Greiner v. Wells, 417 F.3d 305, 323 (2d Cir.

22

2005) ("Courts applying <u>Strickland</u> are especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury.  The decision not to call a particular witness is typically a question of trial strategy that reviewing courts are ill-suited to second-guess.") (internal citations and quotation marks omitted).  Here, trial counsel's strategy was reasonable.  Hubsher was being prosecuted under the theory that Kerry could not consent to sexual intercourse with him because she was his patient and the sex occurred during a treatment session.  Given that the prosecution introduced testimony from Kerry that Hubsher had sex with her, as well as a recorded calls during which Hubsher admitted to the conduct, it was reasonable for trial counsel to focus on undermining the prosecution's case that intercourse occurred during the treatment session rather than disputing that they had sex at all.  Indeed, because Kerry's testimony and Hubsher's own admissions established that the sex had occurred, counsel could reasonably conclude that challenging the treatment session element presented the strongest defense. Therefore, Hubsher cannot overcome the presumption that, under the circumstances, counsel's decision not to introduce that expert testimony was sound trial strategy.  <u>U.S. v. Peterson</u>, 896 F. Supp. 2d 305, 312 (S.D.N.Y. 2012) (quoting <u>Strickland</u>; internal quotation marks omitted); <u>see, e.g.</u>, <u>Swaby v. New York</u>, 613 F. App'x 48, 50 (2d Cir. 2015) (explaining that "the failure to seek an expert does not satisfy the performance prong of <u>Strickland</u> where counsel chooses a strategy that does not require an expert").

Hubsher's next challenges trial counsel's failure to object on two occasions during deliberations:  first, when the court instructed the jury to begin "deliberations anew" after a juror was replaced; and second, when the court gave instructions to the deadlocked jury.  The 440 court concluded that those claims were procedurally barred from review because they were "all based upon facts that are apparent from the trial record" and thus, under N.Y. Crim. Proc. Law §

23

440.10(2)(c), "should have been raised by the defendant on his direct appeal." (ECF No. 10-48 at 3).

The Second Circuit has consistently found this provision of the New York Criminal Procedure Law to be an adequate and independent state ground that precludes habeas review. See, e.g., Murden v. Artuz, 497 F.3d 178, 196 (2d Cir. 2007) ("Where the basis for a claim of ineffective assistance of counsel is well established in the trial record, a state's reliance on subsection (2)(c) provides an independent and adequate procedural bar to federal habeas review"); see also Sweet v. Bennett, 353 F.3d 135, 140 (2d Cir. 2003) (finding that petitioner's ineffective assistance of counsel claim precluded because he failed to bring the issue on direct appeal, and stating that CPL § 440.10(2)(c) is an independent and adequate state ground)). Here, Hubsher has failed to make an exceptional showing of cause and prejudice for his default, so his claims are barred from this Court's review.[6]

Even assuming Hubsher's ineffective assistance claims are reviewable, these claims also fail on the merits. As the 440 court noted, Hubsher challenged both of these alleged jury instruction errors as stand-alone claims on direct appeal, and the Appellate Division found them to be "either proper or non-prejudicial." (ECF No. 10-48 at 3–4.) Specifically, the Appellate Division found that (1) the court's "instructions to the jurors upon receiving a note indicating that they were unable to reach a unanimous verdict were not improper," and (2) "[a]lthough it would

---

[6] Hubsher contends that there was no factual basis to raise on direct appeal the issue of counsel's failure to object to the court's failure to instruct jurors to begin deliberations anew, because that claim was not supported by Hubsher's sworn statement until the filing of the CPL 440 motion. (See Reply Br. at 4–5.) That argument reflects a misunderstanding of CPL 440.10. The relevant inquiry is not whether particular facts were brought to the appellate court's attention, but whether the trial record itself "provided sufficient facts to permit review of these claims by the Appellate Division on direct appeal." De Jesus v. Miller, 323 F. Supp. 2d 547, 555 (S.D.N.Y. 2004). Here, the alleged instances of ineffective assistance concerned matters that were apparent from the trial record and therefore available for review at the initiation of his direct appeal, and Hubsher has not shown any external impediment that prevented him from raising the claim at that time. See, e.g., Brown v. Martuscello, No. 12-cv-0054, 2014 WL 415950, at *10 (E.D.N.Y. Feb. 4, 2014) (explaining that because Petitioner's alleged ineffective assistance claims "concerned matters sufficiently on the record and thus available for review at the initiation of his direct appeal," those claims were not reviewable by the federal habeas court).

have been a better practice for the court to instruct the jury to begin deliberations anew following the substitution, there was no possibility of prejudice as a result of the court's instructions." Hubsher, 176 A.D.3d at 974-75.  The Second Circuit has held that "counsel's failure to object to a jury instruction . . . constitutes unreasonably deficient performance only when the trial court's instruction contained 'clear and previously identified errors.'" Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001) (quoting Bloomer v. United States, 162 F.3d 187, 193 (2d Cir. 1998)).

This Court agrees with the Appellate Division's determination that trial court's instruction to the jury after it reported it was deadlocked was not improper.  After the jury indicated it was unable to reach a verdict, the court instructed that "after further deliberations, most juries are in fact able to reach a unanimous verdict"; that "both sides and I continue to have confidence" that the jurors could perform their duty; and that "there was no reason to believe that the presentation of this case to another jury would be any more intelligent, reasonable, or hardworking and fair as you have been." (Tr. 1518.)

A charge to a deadlocked jury, often referred to as an "Allen charge," must be evaluated "in its context and under all the circumstances." Lowenfield v. Phelps, 484 U.S. 231, 237 (1988). Whether an Allen charge is improper hinges on whether it tends to coerce undecided jurors into reaching a verdict. See, e.g., United States v. Melendez, 60 F.3d 41, 51 (2d Cir.1995), vacated on other grounds by Colon v. United States, 516 U.S. 1105 (1996) (explaining that "[c]oercion may be found when jurors are encouraged to abandon, without any principled reason, doubts that any juror conscientiously holds as to a defendant's guilt."). Viewed in context and under all the circumstances, the trial court's instruction was not coercive. Accordingly, trial counsel was not ineffective for failing to object to it. Nor can it be said that the state court's rejection of this

ineffective assistance claim was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or based on an unreasonable determination of the facts.

Hubsher's ineffective assistance claim concerning the trial court's instruction about deliberations also fails. First, the 440 court also found that defendant had not provided any factual basis for concluding that counsel's failure to object to this instruction was not part of a legitimate trial strategy. (ECF No. 10-48 at 4.) This Court agrees. The jury had previously reported that it was deadlocked. Defense counsel could have believed, as a matter of trial strategy that the court's instruction—even if it was erroneous—might be helpful in maintaining and ultimately securing a deadlocked jury. Cf. Caimite v. Fischer, No. 05-cv-3324, 2009 WL 236917, at *6 (E.D.N.Y. Feb. 2, 2009) (holding that, "faced with a deadlocked jury," trial counsel's decision to request that the court deliver a limited Allen charge was "a reasonable strategic choice" that could have resulted in the defendant's acquittal).

Second, even assuming that it was error not to instruct the jury to begin deliberations anew following the substitution of an alternate juror, the Appellate Division reasonably concluded that any such error was not prejudicial. For similar reasons, there is not a reasonable probability that the outcome of trial would have been different if the Court had instructed the jury to completely restart their deliberations. Hubsher argues that the fact that the jury only deliberated for a short amount of time after the trial court's instruction is proof of prejudice. The Court disagrees. The evidence of Hubsher's guilt was overwhelming, and the record does not suggest that the jury's verdict was affected by the instruction. See, e.g., People v. Copeland, 782 N.Y.S.2d 245, 246 (2004) (holding that, even if the court erred by failing to instruct the reconstituted jury to begin deliberations anew, there was no possibility of prejudice from the error); United States v. Evans, 635 F.2d 1124, 1128 (4th Cir. 1980) (rejecting defendant's argument that his rights were violated

26

due to the trial court's failure to instruct the jury to begin deliberations anew after addition of alternate juror because "[n]othing precluded the jury from starting from the very beginning all over again," and "[t]he speculative assertion of prejudice from the unexceptional instruction, to which no objection was raised, was insufficient to justify reversal").

When Stalzer was questioned by the court, she reported that the jury was deadlocked. (See Tr. 1505.) She was then excused and replaced with an alternative juror. The jury then proceeded to deliberate for the remainder of the afternoon and reported at the end of the day, that it was deadlocked. This sequence of events does not suggest that the court's failure to instruct the jury to begin deliberations anew prejudiced Hubsher.[7] Moreover, the jury's return of a guilty verdict on Monday is further evidence that the jury engaged in meaningful deliberations after the alternate juror was seated. The same jury had reported on Friday afternoon that they were deadlocked. Given this sequence of events, it cannot be said that the state court's denial of this ineffective assistance claim was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or based on an unreasonable determination of the facts. Cf. United States v. Williams, 2003 WL 22175980 at *6 (E.D.N.Y. Sept. 17, 2003) (finding that the "relatively short length of time" between the substitution of two alternate jurors and rendering of verdict was not a basis for finding that jury failed to follow the court's instruction to begin its deliberations anew once alternates were placed on jury).

Given all the points above, the 440 court's denial of Hubsher's ineffective assistance claims was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or based on an unreasonable determination of the facts. Moreover, to the extent that Hubsher raises stand-alone claims based on the two jury instruction issues discussed above, those

---

[7] This was not a situation where the newly constituted jury (that included the alternate) immediately returned a unanimous guilty verdict.

27

claims also fail because he has not shown that the state court's rejection of those claims was contrary to, or involved an unreasonable application of, established federal or constitutional law. As discussed above, the trial court's <u>Allen</u> charge was not improper because it did not tend to coerce undecided jurors into reaching a verdict. <u>See, e.g.</u>, <u>United States v. Melendez</u>, 60 F.3d 41, 51 (2d Cir.1995), <u>vacated on other grounds by</u> <u>Colon v. United States</u>, 516 U.S. 1105 (1996). As for the trial court's failure to instruct the reconstituted jury to begin deliberations anew, Hubsher has identified no clearly established federal law holding that such an instruction is constitutionally required. Courts have repeatedly concluded that the failure to give such an instruction does not, by itself, rise to the level of a constitutional violation. <u>See, e.g.</u>, <u>Peek v. Kemp</u>, 784 F.2d 1479, 1485 (11th Cir. 1986) (holding that the petitioner suffered no constitutional deprivation of constitutional rights when the trial court substituted a juror without instructing the jury to begin deliberations anew); <u>Ortega v. Seibel</u>, 2017 WL 3033421, at *15 (C.D. Cal. July 12, 2017) (noting that federal courts have indicated that there is no constitutional requirement to instruct a jury to begin deliberations anew after seating an alternate juror); <u>Hernandez v. McGrath</u>, 595 F. Supp. 2d 1111, 1141 (E.D. Cal. 2009) (finding no Supreme Court authority requiring a specific instruction after an alternate juror replaces a deliberating juror).

## III.    CONCLUSION

For the foregoing reasons, the habeas petition is denied in its entirety. Because Hubsher has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. <u>See</u> 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close the case.

**SO ORDERED.**

Dated: June 17, 2026
Central Islip, New York

_____/s/_____(JMA)_____
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE